**SIGNED this 18th day of December, 2007.**

*Craig A. Gargotta*
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **ANN LOUISE NOLEN,** | § | **CASE NO. 06-11716-CAG** |
| | § | |
| **Debtor.** | § | **Chapter 7** |

_____

| | | |
|---|---|---|
| | § | |
| **PARTNERS IN FAMILY MEDICINE,** | § | |
| **P.A., and RONALD ONLY,** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 07-1008** |
| | § | |
| **ANN LOUISE NOLEN,** | § | |
| | § | |
| **Defendant.** | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### IN SUPPORT OF JUDGMENT

On October 24, 2007, came on for trial the above-styled and numbered adversary proceeding.

After considering the testimony of the Plaintiff Ronald Only and the Debtor/Defendant Ann Louise

Nolen, and the other evidence presented, as well as the arguments of counsel, the Court took the

matter under advisement.  These findings of fact and conclusions of law are entered pursuant to

Fed.R.Bankr.P. 7052, in support of the Court's Judgment entered contemporaneously herewith.

## **Introduction**

While several causes of action were originally pled in this adversary, by the time of trial the

Plaintiffs had withdrawn all of them except their action objecting to the Debtor's discharge under

11 U.S.C. § 727(a)(4)(A).  That section provides that "[t]he court shall grant the debtor a discharge,

unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false

oath or account . . . .."  Plaintiffs allege that Debtor made a number of omissions and/or false

statements in her sworn Schedules of Assets and Liabilities and Statement of Financial Affairs, each

of which will be discussed in detail below.

In general,

> [t]he purpose of Chapter Seven of the Bankruptcy Code is to give individual debtors
> a "fresh start," and the heart of this goal is embodied in § 727's discharge provisions.
> See, e.g., S.Rep. No. 989, 95th Cong., 2d. Sess. 7 (1978), reprinted in 1978 U.S.Code
> Cong. & Admin.News 5787, 5793. "The discharge provisions require the court to
> grant the debtor a discharge of all his debts except for very specific and serious
> infractions on his part." Id.

*In re Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991).

In addition, "the section 727 exceptions are construed liberally in favor of the debtor and

strictly against the creditor in furtherance of the 'fresh start' policy of the Bankruptcy Code." *In re

DeVoll*, 266 B.R. 81, 97 (Bankr. N.D. Tex. 2001); *see also In re Stanton*, 2007 WL 2538431, *7

(S.D. Tex.) ("For debtors who knowingly and fraudulently make false oaths or accounts, the harsh

remedy of a complete bar to discharge must be construed liberally in favor of the debtor and strictly

against the objecting party."), *quoting In re McLaren*, 236 B.R. 882, 893 (D. N.D. 1999).

Consistent with this general approach, it is the plaintiff who has the burden of proving an

objection to discharge under § 727(a)(4)(A).  *Beaubouef v. Beaubouef*, 966 F.2d 174, 178 (5th Cir.

1992).  "The elements of an objection to discharge under § 727(a)(4)(A) must be proven by a preponderance of the evidence."  *Id.*  Those elements are: "'(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.'"  *In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005), *quoting Beaubouef*, 966 F.2d at 178.  "An omission of an asset can constitute a false oath."  *Id.*

Moreover, "Bankruptcy Courts have not construed § 727(a)(4) generally to impose strict liability for the schedules and false statements."  *Interfirst Bank Greenville, N.A., v. Morris (In re Morris)*, 58 B.R. 422, 427 (Bankr. N.D. Tex. 1986) (McGuire, J.).  Innocent mistakes and inadvertence are generally not sufficient to result in denial of a discharge. *See e.g., Mozeika v. Townsley (In re Townsley)*, 195 B.R. 54, 65 (Bankr. E.D. Tex. 1996) (Sharp, J.) ("The denial of a discharge under § 727(a)(4)(A) cannot be imposed where the false statement was the result of a simple or honest mistake or inadvertence.  Rather, to sustain an objection to discharge under this section, the debtor must have willfully made a false statement with intent to defraud his creditors.").

A debtor need not have acted deliberately to deceive, however. *Beaubouef*, 966 F.2d at 178 ("It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement.  Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them."), *quoting In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).  The requisite intent can be shown by establishing that the debtor acted with reckless disregard for the truth, which can be proven by circumstantial evidence. *In re Sholdra*, 249 F.3d 380, 382 (5th Cir.), *cert. denied,* 534 U.S. 1042 (2001) ("statements made with fraudulent intent–or reckless indifference to the truth . . . can be proven by circumstantial evidence"); *Beaubouef*, 966 F.2d at 178 ("the existence of more than one falsehood, together with [the debtor's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless

indifference to the truth and, therefore, the requisite intent to deceive"); *accord, **Ford v. Mellon Financial Services Corporation (In re Ford)***, 1986 WL 14997, *4 (S.D. Tex.) ("When impeached, Debtor candidly admitted that expediency motivated the deception.  Such reckless disregard for the truth is circumstantial evidence of the requisite fraudulent intent and will alone support denial of discharge."); ***In re Sullivan***, 204 B.R. 919, 942-43 (Bankr. N.D. Tex. 1997) (Abramson, J.)  ("A series of even innocent mistakes or omissions can constitute evidence of a pattern of reckless disregard for the truth. . . .  Thus, courts look at the circumstances surrounding the omissions to determine whether they were intentional."), *citing **Morris***, 58 B.R. at 428.

### Factual Background

Much of the background is not disputed.  In November of 2003, Plaintiff Dr. Ronald Only and Defendant/Debtor Dr. Ann Nolen formed a professional association, Partners in Family Medicine ("PIFM") as 50/50 owners to carry on their medical practice.

The partners had differences throughout their association, and in January of 2005, the Debtor quit practicing with Plaintiff Only.  In March of that year, she filed suit against both Dr. Only and PIFM, to dissolve PIFM.  Dr. Only counterclaimed in that suit.  In April of 2005, the parties settled their differences, memorializing that agreement in a "Rule 11 Agreement" filed with the state court in Debtor's suit.  Under the Rule 11 Agreement, Nolen received some of the assets of PIFM, most notably some equipment that was subject to the liens of Compass Bank (the "Rule 11 Agreement Equipment").

After Debtor left PIFM, Compass Bank sued both her and Dr. Only on their guarantees of the debt secured by the equipment, and in October of 2006 the Bank obtained a judgment against both, jointly and severally, for approximately $211,000.'

On October 26, 2006, Dr. Nolen filed a petition under Chapter 7.

## False Statements or Omissions

The Plaintiffs identify ten[1] of the Debtor's responses in her Schedules or Statement of Affairs that they claim are either false or so incomplete that they constitute a false oath and, when those ten items are taken together, warrant denial of her discharge. There is no dispute that each of these responses are statements made under oath. *Beaubouef*, 966 F.2d at 178 ("It is undisputed that the schedules filed by [the debtor] constitute statements under oath within the meaning of § 727(a)(4)(A). Bankruptcy Rule 1008 requires that '[a]ll petitions, lists, schedules, statements of financial affairs, [etc.] shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.'"), *citing* 4 *Collier on Bankruptcy* ¶ 727.04[1], at 727-59 (15th ed. 1992). Whether the Plaintiffs have satisfied their burden of establishing the other elements of a 727(a)(4)(A) action is, however, hotly disputed.

**1. Debtor's Address in the Petition**. The Debtor filled out the blank box requesting her "Street Address" in the form Petition with the street address of her office, not her residence. The Debtor testified she listed her office address because that was where she received her mail. She also testified that she listed that same address on her driver's license and voter's registration, and had ever since she began renting and no longer owned her residence. The Court finds that, given this testimony, the Debtor believed she was answering the question appropriately, and there was insufficient evidence of her knowledge of the falsehood of her response, and of her fraudulent intent.

---

[1] The Plaintiffs actually list thirteen items, but three of them overlap others to such an extent that the Court need not address those separately. In addition, at trial Plaintiffs elicited a significant amount of testimony regarding the Debtor's failure to list two dogs as her personal property, in spite of having listed expenses related to their care. Any issue regarding the dogs was waived, however, by the Plaintiffs having failed to include it in their pre-trial order. In the alternative, there was insufficient evidence that the Debtor's omission was material, or even that it was "false"–her testimony was that she may no longer have had her dog by the petition date, and that the other dog belonged to her daughter. Thus, at most she failed to list the dog(s) as property held for another, but the Court finds that any such omission was not done with the requisite intent since, by listing the pet expense, the Debtor showed that she was not attempting to hide an asset.

Moreover, there was no evidence provided that indicated how the different address deceived anyone, including the Plaintiffs, or that the purported wrong address negatively impacted the bankruptcy case.

**2. Location(s) of Debtor's Personal Property.**  The Debtor failed to list any location with respect to any of the personal property she listed on Schedule B.  This omission the Court finds to be minor and not intended by the Debtor to deceive.  The Debtor provided an extensive, itemized list of personal property, including values, from which her intent not to deceive can be inferred. Because of the nature of most of the property listed, it can be assumed that its location was her residence, and that was her testimony.  She testified that an insignificant number of items, with insignificant values, were in storage elsewhere.  As the Plaintiffs concede, there are no such things as perfect schedules.  ***The Cadle Company v. Guenther (In re Guenther)***, 333 B.R. 759, 768 (Bankr. N.D. Tex. 2005) (Hale, J.) ("[i]t may be close to impossible to produce Schedules and SOFAs that contain no mistaken information, and bankruptcy papers with mistakes are not, alone, enough to bar a debtor's discharge.").[2]  Given the Debtor's testimony the Court finds that, in and of

---

[2] The Fifth Circuit Court of Appeals in ***In re Tomasek***, 175 Fed.Appx. 662, 2006 WL 925536, *7 (5th Cir.) (unpublished opinion), appears to agree that perfection in preparing Schedules is not required when it noted the bankruptcy court's comments to the effect "that '[w]hile it would like to have every debtor's schedules be perfectly correct, the standard for obtaining a discharge is not perfection.'"  In ***Tomasek***, the Court examined 28 statements made by the debtor that were alleged to be false and found eight to be false.  Each of those was explained by the debtor and the bankruptcy court believed those explanations.  The falsities, the Court of Appeals found, related to items of trivial value, the inaccurate answers were often accurately disclosed elsewhere, and the debtor provided numerous other answers that were correct.  Under those circumstances, the Fifth Circuit Court of Appeals affirmed the bankruptcy court's finding of no fraudulent intent on the part of the debtor. The Court of Appeals also determined, however, that its opinion in ***Tomasek*** should not be published and it therefore is not precedent except under the limited circumstances.  Fifth Circuit Rule 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like).") (footnote omitted).  While not binding on this Court, the opinion may, however, be considered guidance.  ***See Neary v. Hughes (In re Hughes)***, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006) (noting that the unpublished

(continued...)

itself, this omission is not sufficient to warrant denial of her discharge. Moreover there was no evidence that the Debtor's failure to list the location of the items was intentional or reckless.

**3. The Debtor's Interests in Advocare and Stream Energy.** The Plaintiffs alleged that the Debtor failed to disclose her interest in several business ventures or entities. The Court finds that there was insufficient evidence the Debtor had any interest in Advocare or Stream Energy.

The Plaintiffs argued at length that the Debtor's failure to list her interest in these two entities, and/or to list the two as sources of income to her (discussed below in detail under Item 9, "Debtor's Income"), was a conscious attempt to hide income. Based on the evidence provided, however, the Court disagrees.

The Debtor provided uncontroverted testimony that, prior to her bankruptcy case, she had worked as a sales representative for Stream Energy, an entity that contracts with consumers to provide utility service. Stream Energy provides consumers with an option to purchase utility service from one of a number of competing utility providers. According to her testimony, the Debtor was paid a commission. There was no evidence that she owned any interest in Stream Energy.

Similarly, there was no evidence the Debtor owned any interest in Advocare. Rather, her only testimony was that she sold nutritional products for Advocare and acted as a distributor.

In *In re Pratt*, the debtor failed to list in his Schedules his alleged retention of a .0549% partnership interest, but the Court of Appeals found that because that alleged interest was merely the result of a scrivener's error in documenting a transfer of his larger interest, he actually did not retain an interest. *Pratt*, 411 F.3d at 569-70. It therefore held that the debtor's failure to list the fractional interest was not false. *Id.* In addition, while the debtor disclosed his mother's trust naming him a beneficiary, he did not also disclose his entitlement to substantial distributions as such

---

[2](...continued)
opinions of the Fifth Circuit Court of Appeals and another bankruptcy court in the Northern District of Texas were "instructive, but not binding" on it).

beneficiary.  As with the fractional partnership interest, the Court of Appeals found that he had "no tangible interest in the assets [of the spendthrift, totally-discretionary trust] until distribution" and that, therefore, it was not false statement when the debtor omitted such alleged entitlement from his Schedules).  *Id.*  As in ***Pratt***, the Court here finds that, in light of the uncontroverted evidence that she owned no interest in either Advocare and Stream Energy, there was insufficient evidence of the falsity of the Debtor's statements regarding her ownership of any such interest(s).

**4. Debtor's Valuation of her Interest in her Practice.**  The Debtor listed the value of her interest in her Professional Association at $0 on her Schedules.  Her testimony was that she believes that the liabilities of the Association exceed its assets and that, therefore, her interest is worthless.  The Debtor based her valuation on the following.  Ann Nolen, P.A. had five employees and roughly 3000 patients.  Debtor sees five to twenty patients a day.  The P.A. has leased the equipment for her practice since it began doing business in April of 2005, and neither the P.A. nor the Debtor personally owns any significant equipment.  Debtor averages $35,000-$40,000 in gross revenues per month, which averages to $3,200 net as her monthly salary, as indicated on her Schedule I.  The P.A. has no retained earnings, nor does the Debtor own any assets used by the P.A.  Further, the Debtor is subject to a malpractice claim which she contends has damaged her reputation, reducing the value of the P.A.

Considering all this evidence, which the Court finds credible, and the fact that value itself is often a matter of opinion and not an objective, verifiable fact,[3] the Court finds that a value of $0 for the Debtor's ownership interest in the P.A. is reasonable, and that the Plaintiffs therefore have

---

[3] *But see **In re Mitchell***, 102 Fed.Appx. 860, 862 n.1 (5th Cir. 2004) ("Omissions and incorrect valuations qualify as false statements.").  ***Mitchell*** was, however, an unpublished and therefore not binding decision "except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."  Fifth Circuit Rule 47.5.4.

failed to prove that this statement on her Schedule B was false, and/or that the Debtor had the requisite knowledge of its falsity and fraudulent intent in making the statement.

**5. Debtor's Ownership or Transfer of the Rule 11 Agreement Equipment.**  The Debtor did not list an interest in the equipment that was transferred to her under the Rule 11 Agreement that she entered into with Plaintiff Only, nor did she list it on her Statement of Financial Affairs as having been transferred to her Professional Association.   She testified that she believed the equipment belonged to her PA, and that its ownership and the equipment's value was taken into account in her valuation of her interest in the PA as listed on Schedule B.  While this ownership issue may be less technical and complex than the issue addressed in ***Pratt***, the Fifth Circuit Court of Appeals in that case affirmed the bankruptcy court's decision finding that, because of the issue's "legalistic nature," the debtor's failure to list a .0549% partnership interest allowed the court to infer the debtor's lack of fraudulent intent.  ***Pratt***,  411 F.3d at 570.  Specifically, the Court found that, among other things, the interest was "retained" only because of a typo in documenting a transfer of his larger interest and there was no evidence that the debtor knew he retained anything in the transfer.  ***Id.***  Similarly, in this case the Court finds that in light of the Debtor's testimony, which the Court finds to be credible, and the fact that Plaintiff has no legal education, her omission of the equipment as her personal assets and/or its transfer to her PA was an honest mistake, and the Plaintiffs have failed to establish she had the requisite knowledge and/or fraudulent intent in not expressly listing it or its transfer.

**6. Debtor's Exemption of her Daughter's Car**.  The Debtor listed on Schedule C, as her own exempt property, her adult daughter's automobile in addition to her own, when under Texas law she is entitled to only one exempt vehicle.  *See* Tex. Prop. Code § 42.002(a)(9) (providing an exemption for "a two-wheeled, three-wheeled, or four-wheeled motor vehicle for each member of a family or single adult who holds a driver's license or who does not hold a driver's license but who

relies on another person to operate the vehicle for the benefit of the nonlicensed person"). This claim of exemption was patently invalid, and the Plaintiffs argue it was a false statement made under oath.

The Debtor pointed out, however, that no party–including the Trustee and the Plaintiffs–objected to that exemption, and that the time to object has passed. The purpose for which the Debtor offered this fact is not entirely clear– whether it was as grounds for the Plaintiffs' estoppel (i.e., that the Plaintiffs' failure to object to the exemption precluded them from arguing at this point that it was not valid), as evidence that the Debtor's "statement" was not false (i.e., that the exemption is valid), or as evidence that her "statement" was not material (i.e., that the property's value was not significant, as shown by the fact that no party pursued it by objecting to the exemption).

The Court finds that the failure of the Plaintiffs to object timely to that exemption is no bar to their raising at this point the fact that the claim has no basis in law or fact, as evidence of the Debtor's fraudulent intent[4]–i.e., her alleged reckless disregard for the truth. Notwithstanding that evidence, however, the Court finds that the Debtor's claim of this exemption is not a "false oath" within the meaning of § 727(a)(4)(A). Rather, subsection (a)(4)(B), barring discharge when "the

---

[4] *See **Taylor v. Freeland & Kronz**, 503 U.S. 638, 644 (1992), in which the Supreme Court noted that even if the trustee's objection to a claim of exemption that had no basis in law or fact were overruled because time-barred, such claims by debtors would still be subject to review and scrutiny under various other provisions of the Bankruptcy Code, Rules and criminal statutes:

> Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. See, e.g., 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases). These provisions may limit bad-faith claims of exemptions by debtors.

debtor knowingly and fraudulently, in or in connection with the case . . . presented or used a false claim," applies to the Debtor's claim of exemption.[5]  *See **Taylor v. Freeland & Kronz***, 503 U.S. 638, 644 (1992) (including, as a possible "limit [on] bad-faith claims of exemptions by debtors," not § 727(a)(4)(A), addressing false *oaths* and *accounts*, but rather subsection (a)(4)(B), authorizing denial of discharge for presenting fraudulent *claims*).  In this case, the Plaintiffs did not request relief under § 727(a)(4)(B).

In the alternative the Court finds that the Debtor's exemption claim is not material.  "In determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors."  6 ***Collier on Bankruptcy***, ¶ 727.04[1][b] at 727-42 (15th ed. revised 2007); *accord,* ***In re Pratt**,*  411 F.3d 561, 566 (5th Cir. 2005) ("[M]ateriality does not depend on the asset's value . . .."); *see also **Beaubouef***, 966 F.2d at 178 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious.").  Rather, "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  ***Id.***

There must, however, be more than just *any* "relationship" between a false statement regarding an asset or the omission of an asset from a debtor's schedules, and the debtor's business transactions or estate, in order for that statement or omission to be "material."  The Fifth Circuit Court of Appeals in ***Pratt*** commented on the sort of relationship that is required.  Discussing

---

[5] The difficulty of analyzing the falsity of Debtor's exemption as a statement, in light of its allowance at this stage of the proceedings, illustrates why it is appropriate to address it instead as a "false claim" under § 727(a)(4)(B), rather than a "false oath" under § 727(a)(4)(A).

*Johnson v. Baldridge (**In re Baldridge**)*, 256 B.R. 284, 290 (Bankr. E.D. Ark. 2000), the ***Pratt*** Court noted that:

> in *Johnson v. Baldridge (In re Baldridge)*, the bankruptcy court concluded that omission of bank accounts was material, even if the accounts had little or no balance: "Few, if any, assets are more material to a consumer debtor's financial affairs than a bank account, for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the details of the debtor's finances."

***Pratt***, 411 F.3d at 567. The Court in ***Pratt*** went on to find that the debtor did not have the requisite intent to for the court to deny his discharge for, among other things, failing to list his status as a trustee of a trust, because even if he were required to list it, it "was not material because this knowledge would not assist [the debtor's] creditors." *Id.* at 568. Thus, while an omitted asset is not *per se* immaterial when it has little or no value, if it does not have significant value it appears that a false statement about it or failing to list it is material only if knowledge of that asset would have assisted in the creditors in understanding the debtor's financial affairs, or in discovering an asset that did have some value.[6] *See also **In re Guenther***, 333 B.R. 759, 768 (Bankr. N.D. Tex. 2005) ("The status of bank accounts, interests in businesses, and the identity of accountants all 'bear a relationship' to the Debtors' estate [and t]hese are the basic matters about which creditors and the Court are most concerned.").

In this case, the Court finds that the absence of any objection to the Debtor's exemption of her daughter's car is some evidence that the claim of exemption was not material. It also finds that the Plaintiffs themselves, by not objecting, may be considered to have made some "admission" that

---

[6] In addition, even if a worthless asset is material, the fact that it is worthless or of little value may be evidence that the debtor lacked fraudulent intent in failing to list it. *See Pratt*, 411 F.3d at 567 (finding no error in the bankruptcy court's finding that the debtor's omission of an inactive, empty bank account, while material, was not done to "hinder, delay or defraud or to commit a false oath that amounted to a substantial deprivation of property to the estate for the creditors such as [the plaintiff] and others that the trustee represents").

the exemption was not material. More important, however, is the fact that the Debtor has no property interest (other than bare legal title) in her daughter's car and it therefore is not property of the Debtor's estate. She did list it, as her daughter's car, on her Schedule B, and there is no evidence that if she had not listed it on her Schedule C as exempt it would have lead to other assets or information about her financial affairs. The Court therefore finds that the Debtor's claim of exemption of her daughter's car was not material and so not a basis for denying her discharge under § 727(a)(4)(A).

**7. Debtor's Homestead Exemption**. This presents some of the same issues as the Debtor's car exemption discussed above. Debtor claimed an exemption under Texas law of a one-half interest in approximately 75 acres and a three-quarters interest in approximately 93 acres in Fayette County, Texas, with improvements. She testified that she owns no other real estate and that she intends to move to the property when she retires, which the evidence indicated may occur in the relatively near future, given her age. As with the Debtor's exemption of her daughter's car, no party–including the Trustee and the Plaintiffs–objected to her homestead exemption and the time to do so has now passed. As with her claim of exemption of her daughter's car, the Court finds that her homestead exemption claim was not a "statement" within the meaning of § 727(a)(4)(A), but rather was a "claim" as that term is used in § 727(a)(4)(B), which the Plaintiffs have not alleged or argued as a basis for denying her discharge.

In the alternative, the Court finds that the Plaintiffs failed to sustain their burden of proving that the Fayette County property was not properly claimed as the Debtor's homestead–i.e., that the statement, if it was one, was false. For that reason also, the Plaintiffs failed to show that the Debtor knew the statement was "false" when she made it. *See* discussion above regarding ***Pratt***, 411 F.3d at 569-70 (denial of creditor's objection to the debtor's discharge for false oath was proper where the creditor failed to prove the falsity of the debtor's statement).

**8. The Dates Debtor Incurred her Debts.**  The Debtor failed to list the dates that she incurred the liabilities she listed on her Schedule F "Creditors Holding Unsecured Nonpriority Claims."  The Official Form for that Schedule, which the Debtor used, provides a space for such information as to each claim listed.  The Debtor did list "various" in that space for seven of the claims she listed–specifically, for all of the six credit card claims she listed and for a claim for legal fees.  She did not list anything in that space for the remaining nine claims that she listed: a guaranty/judgment of Compass Bank, three lease guaranty claims of Copper Ridge, HPSC, and Marlin Leasing, two malpractice claims of Craig Howell and Lisa Howell, a "medical" claim of First Call Medical, a "collection" claim of Highland Collection, and an "advertising" claim of the Round Rock Leader.  Again, the Court finds that, although this information is helpful and arguably material, because of its relative insignificance the Debtor was not shown to have omitted it with the intention of hindering, delaying or deceiving her creditors or with a reckless disregard for the truth.

**9. Debtor's Income.**  The Debtor did not list income from several sources on her Schedule I "Current Income of Individual Debtors" and, the Plaintiffs allege, did not include it in her response to Question 1 on her Statement of Financial Affairs.

Specifically the Debtor admitted in her testimony that she did not list in her Statement of Financial Affairs pre-petition 2006 income of $196, nor did she include in Schedule I any current income she is receiving, from Stream Energy.  She testified that she is compensated on a monthly basis, by a commission that is calculated as a percentage of the utility services billings of the customers she has signed up for the company.  Her testimony was that she joined Stream Energy in April of 2006, that at the time her bankruptcy case was filed in October of 2006 there were roughly twenty customers to whom she had sold utility service, and that she had not sold any utility service for Stream Energy since her bankruptcy filing.  She further testified that since her Chapter 7 petition was filed, she had been receiving approximately $12.00 per month in commissions from her sales.

Her explanation for failing to list that income was that she simply forgot to list it, given how small the amount was. The Court finds that her income from this source was so insignificant that her testimony that she simply forgot to include it is credible and reasonable. Accordingly, there was insufficient evidence of her knowledge of the falsity of her income statement as it pertains to the omission of the Stream Energy income, and insufficient evidence of her fraudulent intent or reckless disregard for the truth with regard to this omission.

The Debtor also testified that she worked for Advocare from October of 2003 until October of 2006, selling nutritional supplements, and that she was compensated in two different ways. First, she explained, she purchased the products from Advocare at a 40% discount and then sold them to her patients, retaining the profits (the "Sales Business"). That, according to the Debtor's testimony, accounted for the "bulk of" the income from Advocare. In addition, she testified that Advocare also paid her a percentage of its sales of products to distributors whom she recruited to join the multi-layer marketing scheme that the company used (the "Recruiting Commission Business").

According to her testimony, the Debtor personally bought and sold the Advocare products when she was with PIFM, but since she formed Ann Nolen, P.A., that entity had conducted the Sales Business rather than her personally. Therefore, the Debtor testified, the profits from the Sales Business had been paid to the P.A. rather than to her directly, since at least April of 2005. Any income received from the Advocare Sales Business was therefore taken into account in her valuation of her interest in her P.A. as listed on her Schedule B, she argues. The Court agrees.

On the other hand, her testimony was that she personally has always received all the income from the Recruiting Commissions Business; neither PIFM nor Ann Nolen P.A. was involved in that business. That portion of her income from Advocare, which was much smaller than the income from the Sales Business, the Debtor admits was not disclosed in her bankruptcy papers and was not included in her response to Question 1 on the Statement of Financial Affairs regarding income

15

received in 2005 and 2006. Her testimony was that the amount of that omitted income averaged only $20 to $30 per month. Again, the Court finds that given the *de minimus* amount involved, there is insufficient evidence that she was aware of her omission in failing to disclose it, and insufficient proof that she did so with the requisite intent.

Of much greater concern, however, is that the Debtor did not list *any* income, even that she received from her Professional Association, for the year 2006 and listed only $18.58 as her income for all of 2005.[7] Her testimony was that her bookkeeper and her accountant handled her finances, and that as of the date of her bankruptcy filing she had not received the K-1s from her former Professional Association, which the Plaintiff controls, to enable her accountant to calculate her income for 2005 and 2006.

She did not provide, however, even rough estimates of her actual income, nor did she list the amounts as "unknown" with an explanation of why the actual amounts could not be provided. This evidence is admittedly troubling, and indicates to the Court a possible lack of concern regarding her obligation to provide as complete and accurate information as possible. In *Neary v. Hughes (In re Hughes)*, 353 B.R. 486 (Bankr. N.D. Tex. 2006) (Jernigan, J.), the bankruptcy court was faced with a similar concern, when it noted that while it was "not beyond the pale that [the non-debtor spouse had been] tasked with the responsibility to pay family expenses, [the debtor] should have made an effort to better educate himself with regard to these matters–at least before swearing under oath to such matters." *Id.* at 505. Instead of educating herself regarding her past and current income by researching sources other than the missing K-1s, the Debtor in this case apparently merely assumed that better, more complete responses to the questions about her income could be supplied later if required–presumably before it was too late to do so without negative consequences to her.

---

[7] The Defendant's exhibits, including those regarding the amount of her pre-petition 2006 income and her 2005 adjusted gross income, were not offered or admitted at trial.

The Debtor also argued that she promptly provided the missing information to her Chapter 7 Trustee.  She has, however, never amended her Statement of Financial Affairs to include that information (nor has she ever amended her Schedules to remedy any of the other alleged defects of which the Plaintiffs complain).

Specifically, the Debtor contended that her promptly providing the missing information to the Trustee cured, or at least ameliorated, her omissions, and/or that it was evidence that the omissions were innocent and that she did not intend to hide assets or information.  It is true that amended schedules "do not negate the fact that [a debtor] made knowingly false oaths in his original schedules and statement of financial affairs." *In re Sholdra,* 249 F.3d 380, 382 (5th Cir.), *cert. denied,* 534 U.S. 1042 (2001); *see also,* **WTHW Investment Builders v. Dias (In re Dias)**, 95 B.R. 419, 424 (Bankr. N.D. Tex. 1988) (Felsenthal, J.) ("The knowing and fraudulent false oath in the statement of financial affairs and schedule of assets cannot be subsequently remedied by amended schedules or testimony at a Bankruptcy Rule 2004 examination or an adversary proceeding."). Debtor's counsel at trial argued that she did not amend precisely because the case law has held that it would not have negated her having originally filed schedules that included false oaths.  The Court does not read this statement in *Sholdra* for the proposition that such amendment is some sort of admission or, at best, useless.  Rather, it agrees with the bankruptcy court in *In re Rajabali* in its analysis of the issue addressed in *Sholdra*:

> In *In re Sholdra*, Debtor amended his schedules and statement of financial affairs after his deposition confirmed the existence of false statements.  *In re Sholdra*, 249 F.3d at 381. A judgment creditor filed a motion for summary judgment under, inter alia, § 727(a)(4)(A) based on such false oaths.  *Id*. Debtor failed to respond.  *Id*. The Fifth Circuit affirmed summary judgment in favor of the creditor finding that it was undisputed that Debtor originally made false statements in his schedules and statement of financial affairs and that due to Debtor's failure to respond to the motion for summary judgment, there were no facts creating genuine issues of material facts.  *Id*. at 383.  The Court, however, citing *Beaubouef*, specifically stated that it was not deciding "whether such amendments could ever preclude summary judgment denying discharge."  *Id*. (citing *Beaubouef*, 966 F.2d at 178 ("suggesting that an

opportunity to clear up inconsistencies and omissions with amended schedules may be considered in analyzing findings of actual intent to defraud")).

*In re Rajabali*, 365 B.R. 702, 716 (Bankr. S.D. Tex. 2007) (Isgur, J.).  Thus, this Court is of the opinion that *Sholdra* stands for the proposition that the mere fact that a debtor later amends his schedules to correct an earlier misstatement or omission does not *prevent* the court from finding that the debtor made a false oath originally; rather, it allows, but does not *require,* the court to find that the original statement was made with fraudulent intent or reckless disregard for the truth.

This approach is consistent with the treatment by other courts, after *Sholdra*, of amendments to originally defective Schedules.  *See e.g., Dias*, 95 B.R. at 425 (noting that "a later disclosure may be evidence of innocent intent," but refusing to infer any innocent intent under the particular circumstances of the case "since [the debtor's] disclosure cannot be considered voluntary at this stage of the proceedings"); *Hughes,* 353 B.R. at 505-06 (noting that "[i]f the debtor makes an honest effort to clear up honestly made mistakes, such efforts should not be ignored in favor of focusing on the first, ugly error(s)" and holding that, "[a]lthough [the debtor's] lack of knowledge about certain matters concerns this court, because he made attempts to clear up inconsistencies either by answering himself or by referring the U.S. Trustee to parties with more superior knowledge, the U.S. Trustee's objection to [the debtor's] discharge pursuant to section 727(a)(4) [would be] overruled.").

Thus, if a debtor makes prompt, voluntary disclosure and if the omissions are not substantial, such remedial action may demonstrate that the debtor lacked the intent to hinder, delay or deceive his or her creditors in originally failing to list an asset.  *Morris*, 58 B.R. at 430 (quoting *In re Tabibian*, 289 F.2d 793, 797 (2$^d$ Cir. 1961)).  In *Morris***,** the Bankruptcy Court noted that the bankruptcy referee in the case, "[a]s a 'rule of law,' stated broadly, . . . was incorrect" in his belief

that the debtor's "false answer in the petition was 'cured' by his subsequent testimony at the first meeting of creditors."  The Court explained:

> "The very purpose of the statement of affairs is to give dependable information without need of going further.' . . .  To warrant denial of a discharge, however, the misstatement must have been fraudulent; in determining the bankrupt's state of mind, the referee was entitled to consider the later disclosure as some evidence of innocent intent. Here the small size of the transaction, the brief interval between the statement and the first meeting, and the spontaneous nature of the disclosure coupled with fairly plausible explanations of the transfers themselves were enough to warrant the referee's finding. . . .'"

*Id.* (citation omitted).

In this case, the Debtor's disclosures to the Trustee regarding her income were made promptly.  However, the amount of income she omitted from her Statement of Financial Affairs was not insubstantial and, according to the Debtor's testimony, the subsequent disclosures to the Trustee were made only after his inquiry–i.e., they were not "spontaneous" and thus not truly voluntary. "The decision to amend the Schedules only after untruths are discovered is evidence of fraudulent intent." **Stanton**, 2007 WL 2538431, *7 (S.D. Tex.), *quoting* **Gebhardt v. Gartner (In re Gartner**, 326 B.R. 357, 375 (Bankr. S.D. Tex. 2005) (Bohm, J.); *see also* **In re Guenther**, 333 B.R. 759, 768 (Bankr. N.D. Tex. 2005) (Hale, J.) ("the appropriate response [to not being able to produce perfect schedules the first time] is to offer amended information in a prompt fashion, and not to wait to amend the errors only after the insistence of one of their creditors. . . .  The Debtors' extended delay of over four months in amending their Schedules and SOFA adds to the pattern of withholding information and of fraudulent intent.") (*citation omitted*).

The Debtor also provided a "plausible" explanation for why she signed and authorized the filing of the Statement of Financial Affairs without including the income information required to be provided.  The omission was due in large part to the fact that her tax returns were not completed as of the filing date.  The reason for that delay was that the Plaintiffs had not yet provided her with the K-1s they are required by law to provide her.  It is true that her omissions are not "cured" by the fact

that the Plaintiffs may have had access from other sources to the information missing from her bankruptcy papers. In this case, however, the Plaintiffs–for whatever reason–were a cause of her inability to provide the required information and therefore should not be heard to complain of that omission. *See Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) ("[A] plaintiff seeking equitable relief . . . must show that she has not contributed to the harm at issue. . . . The doctrine [of unclean hands] is applied where a plaintiff's conduct has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing.") (internal quotations and citations omitted).

The Debtor testified that she did not delegate the preparation of her Schedules and Statement of Financial Affairs to her accountant, that she herself provided the information for their preparation to her attorneys and that she did review the Schedules and Statements before they were signed and filed. "[A] debtor must accept responsibility for the information in the statements and schedules." *In re Stanton*, 2007 WL 2538431, \*5 (S.D. Tex.), *citing In re Dreyer*, 127 B.R. at 597; *see also In re Hansen,* 325 B.R. 746, 760 (Bankr. N.D. Ill. 2005) (because a debtor "sign[s] the schedules and SOFA, attesting to the truth of their contents[, h]e is responsible for their inaccuracy, not his lawyer"), *citing Lewis v. Summers (In re Summers)*, 320 B.R. 630, 642 (Bankr. E.D. Mich. 2005) (accord). According to the Debtor's testimony, however, in spite of her advanced education as a doctor of osteopathy, she did not personally manage her business affairs and had both a bookkeeper and an accountant for that purpose. Calculation of her income, unlike a typical wage earner's, would not be a simple affair. She relied on her accountant for the preparation of her tax returns that would have provided that information. The evidence thus indicates that this is not a case where the debtor is a sophisticated businessperson and that, at least with respect to preparing her response to the question on the Statement of Financial Affairs regarding her income, she did not play an active role. *Compare In re Sullivan*, 204 B.R. 919, 943 (Bankr. N.D. Tex. 1997) (Abramson, J.) (finding that

a debtor's reliance on his counsel was not reasonable where the debtor "was a sophisticated businessman and played an active role in the preparation of his Schedules and Statements").

Moreover, the Court finds that the Debtor's testimony with respect to this omission was credible and believes that she did not intend to hinder, delay or defraud her creditors, or that she acted with reckless disregard for the truth, when she failed to list her income.  "[I]n evaluating a § 727(a)(4)(A) claim, 'a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'"  *In re French*, 499 F.3d 345, 353 (4th Cir. 2007), *quoting* **Williamson v. Fireman's Fund Ins. Co.**, 828 F.2d 249, 252 (4th Cir. 1987).

For all of these reasons, although this omission by the Debtor is a serious one and the question is therefore a close one, the Court finds that the Plaintiffs failed to sustain their burden of proving that her intent in responding to the questions about her income was to hinder, delay or defraud her creditors, or that in so responding she showed a reckless disregard for the truth.

**10. Dates and Addresses of Recipients of Debtor's Charitable Contributions.**  The Plaintiffs assert that, in response to Question 7 on her Statement of Financial Affairs requiring the listing of "Gifts" made within one year immediately before the filing of the bankruptcy case, the Debtor failed to disclose the address of the recipient of charitable contributions that she listed, failed to disclose her relationship with the recipient, and failed to disclose the dates those payments were made.  The Debtor listed her church, by name, as having been paid "$400/mo+/-" on "various" dates.  Her relationship as a member of the church is apparent from the frequency of her contributions and the "business" of the recipient.  She testified that she did not know the church's physical address and so did not list it.  The Court finds that testimony was credible and, in light of that testimony and the fact that she did disclose that the payments were made monthly on various dates, finds that any omissions, and the Debtor's failure to list the specific dates that the payments

were made, were not material and were not done with intent to deceive, hinder or delay her creditors

nor with reckless disregard for the truth.

### A Pattern of Reckless Disregard for the Truth

The Plaintiffs further argue that, even if any single false statement or omission of the Debtor

would be insufficient to bar her discharge, when one considers together *all* of the defects in the

Debtor's Schedules and Statement of Financial Affairs that they have pointed out, the "pattern" that

emerges demonstrates the Debtor's reckless disregard for the truth, from which the Court may infer

her intent to hinder, delay or defraud her creditors. *In re Guenther*, 333 B.R. 759, 767 (Bankr. N.D.

Tex. 2005) ("The intent of these misrepresentations in the Debtors' Schedules and SOFA may be

debated individually, but taken in the aggregate a pattern begins to develop."); *Economy Brick

Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428, 432 (Bankr. M.D. La. 1983) ("[T]he cumulative

effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the

truth [to support] fraudulent intent.").

As "[o]ne court simply stated, 'there is a principle of too much; phrased colloquially, when

a pig becomes a hog it is slaughtered.'" *In re Swift*, 3 F.3d 929, 931 (5th Cir. 1993), *quoting In re

Zouhar*, 10 B.R. 154, 157 (Bankr. D. N.M. 1981); *see also In re Berger*, 2000 WL 1901466, *2

(5th Cir. 2000) (referring to bankruptcy court's finding that "[t]here are too many errors for Debtor

not to have noticed, and the errors are obviously willful and fraudulent") (unpublished opinion).

"As the finder of fact, the bankruptcy court has the primary duty to distinguish hogs from

pigs." *In re Swift*, 3 F.3d 929, 931 (5th Cir. 1993).  In fulfilling this duty, this Court

is mindful that, in general,

> [t]he veracity of the bankrupt's statements is essential to the successful
> administration of the Bankruptcy Act. . . . Full disclosure of assets and liabilities in
> the schedules required to be filed by one seeking relief under Chapter 7 is essential,
> because the schedules "serve the important purpose of insuring that adequate

information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true."

*Beaubouef*, 966 F.2d at 178-79, *quoting* **In re Urban**, 130 B.R. 340, 344 (Bankr. M.D. Fla. 1991).

Judge Felsenthal in **Diaz** explained the policy considerations behind § 727(a)(4)(A):

> The Bankruptcy Code provides an honest debtor with a fresh start, free from the burden of past debts. . . . This fresh start has been described as the most extensive 'since the seven year release described in the Old Testament.' . . . To invoke these benefits, the Code requires the debtor to fully disclose his property and his financial affairs since "[a] discharge is a privilege granted the honest debtor and is not a right accorded all bankrupts." . . . "Because of the volume of filings and the need for an expeditious and economical bankruptcy administration, the court, the trustee, and the creditors must be able to rely on the Schedules and Statement of Affairs, as having been prepared with scrupulous accuracy and honesty." . . . As the First Circuit in *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987), explained:
>
>> the very purpose of certain sections of the [code], like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.  The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction.  As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."  Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Diaz*, 95 B.R. at 421 (citations omitted).

The Court has carefully reviewed the Debtor's Schedules as a whole and the false statements and omissions alleged by the Plaintiffs.  As discussed above, the Court has found no false statement or omission with respect to the Debtor's failure to list her alleged interests in Advocare and Stream Energy and with respect to her claims of exemption of her daughter's car and her homestead.  Even considering the remaining items as a whole, and considering in addition those matters raised by the Plaintiffs as further evidence of her reckless approach to her disclosure obligations, the Court is not convinced that the Plaintiffs have presented sufficient evidence to establish a pattern of reckless disregard for the truth in the way she listed or failed to list her assets or liabilities on her Schedules

and Statement of Financial Affairs. Like the bankruptcy court in **Hughes**, "[t]his court is unconvinced that, in effect, a threshold magic number of errors made by a debtor on his or her schedules is, de facto, the knowing and fraudulent making of a false oath or account." **Hughes**, 353 B.R. at 505. Instead, this Court reads the relevant authority in this Circuit as indicating that a court should deny a debtor's discharge for false oaths or accounts when "the *totality* of the facts in th[e] case . . . leads th[e] Court to find that Debtors have acted with fraudulent intent and/or reckless disregard for the truth." **Guenther**, 333 B.R. at 768 (*emphasis added*); *see also* **Sullivan**, 204 B.R. at 942-43 ("courts look at the circumstances surrounding the omissions to determine whether they were intentional").

For instance, the debtors in **Guenther** not only had mistakes in their Schedules and Statement of Financial Affairs, but had also delayed "over four months in amending [them]" *and* "had thwarted the discovery and disclosure process at every turn and had generally been recalcitrant or slow in providing information." **Hughes**, 353 B.R. at 505 (discusing **Guenther**). Similarly, in **DeVoll**, the bankruptcy court denied the debtor's discharge based not only on the "extensive omissions in Debtor's schedules and statements of financial affairs," but also because of the "Debtor's repeatedly inconsistent sworn testimony." **In re DeVoll**, 266 B.R. 81, 99 (Bankr. N.D. Tex. 2001). In **Stanton**, the District Court affirmed the bankruptcy court's denial of the debtors' discharge where the evidence was that information regarding the debtors' business and its assets (the medical practice of one of the joint debtors) was omitted because they wanted to "save the business," not because of innocent mistakes. **In re Stanton**, 2007 WL 2538431, *3 (S.D. Tex.).

Moreover, the approach of the Fifth Circuit Court of Appeals has not been merely to count the number of errors and misstatements in the debtor's Schedules and Statement of Financial Affairs

to determine if there is a "pattern of reckless disregard."[8]  For instance, the Court in ***Pratt*** expressly noted the debtor's history of drug problems and chronic irresponsibility in the management of his debt, and upheld the bankruptcy court's findings that he lacked the requisite knowledge and/or intent with respect to each of the alleged misstatements and errors.  ***Pratt***, 411 F.3d 561 (5th Cir. 2005).  In ***Beaubouef***, the Court of Appeals affirmed the bankruptcy court's denial of discharge where the debtor failed to list several assets and his testimony regarding one of those assets was "evasive" and contradicted his other sworn testimony.  ***Beaubouef***, 966 F.2d 174 (5th Cir. 1992).

In this case, there was no evidence of a larger pattern of the Debtor having attempted to avoid discovery, nor did she provide evasive or contradictory answers in her testimony.  Rather, the Court finds her to be credible and honest.  Her answers in her Schedules and Statement of Affairs are in general fairly detailed and responsive to the questions asked.  Her itemization of her personal property on Schedule B is extensive.  It is understandable that Plaintiff Only should object to her discharging a large sum for which she is jointly liable with him, leaving him responsible to make good on that obligation.  Neither the obligee on that substantial debt, nor the Chapter 7 trustee in this case, however, have taken any issue with the level of the Debtor's disclosure or cooperativeness in this case.  This is not a case of the Debtor "playing fast and loose with her assets or with the reality

---

[8] Admittedly, the Court of Appeals' decisions in ***Mitchell***, ***Porobil***, and ***Berger*** appear to merely catalog the debtors' errors and omissions in the papers and not provide much analysis or reasoning in its affirmances of the lower courts' denials of the debtors' discharges.  *See **Mitchell***, 102 Fed.Appx. 860 (5th Cir. 2004); ***In re Berger***, 244 F.3d 134 (5th Cir. 2000); ***In re Porobil***, 182 F.3d 915 (5th Cir. 1999).  This deficiency in the opinions highlights why Fifth Circuit Rule 47.5.4 provides that such unpublished opinions may not be relied on as precedent except in limited circumstances not applicable here.

In addition, as discussed above, the ***Sholdra*** opinion sheds little light on this issue because of its procedural posture.  The Court of Appeals in that case was considering the granting of the creditor/plaintiff's motion for summary judgment to which the debtor did not respond or "present any facts creating genuine issues of material facts."  ***Sholdra***, 249 F.3d 380, 382 (5th Cir.), *cert. denied*, 534 U.S. 1042 (2001).  The issue decided was thus whether a factual issue had been raised, not what was sufficient proof at trial regarding a debtor's alleged false oath or account.

of her affairs." *Diaz*, 95 B.R. at 421.  Rather, the Court finds that she is an honest debtor who has attempted to comply, with admittedly imperfect success, with the Code's requirements of disclosure. The mistakes she made the Court finds to be honest and innocent ones.  Accordingly, based on the Debtor's testimony and the Court's assessment of her credibility and veracity, the Court finds that, even considering all the matters the Plaintiffs have raised, they have failed to sustain their burden of proving the Debtor exhibited a reckless disregard for the truth in filling out her Schedules and Statement of Financial Affairs.  "Section 727(a)(4)(A) . . . require[s] that I balance the Debtor's entitlement to a liberal construction of the discharge denial provisions of the Code and the Debtor's reciprocal obligation to be fully honest in all respects in his participation in the bankruptcy process, to insure that the bankruptcy benefits are not bestowed on an unworthy debtor." *In re George*, 370 B.R. 4, 8 (Bankr. D. Mass. 2007), *citing In re Tully*, 818 F.2d 106, 110-12 (1st Cir. 1987).  Based on all the evidence, the Court finds this Debtor is not unworthy.

### Conclusion

Based on the foregoing, the Court finds that the Plaintiffs' Complaint should be denied, and judgment entered in favor of the Debtor/Defendant.  A separate judgment consistent with these findings of fact and conclusions of law will be entered.

# # #